**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| INNOVATIVE DISPLAY TECHNOLOGIES LLC | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 2:13-cv-00783-JRG |
| MICROSOFT CORP., | § § | |
| *Defendant.* | § § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court are Microsoft Corporation's ("Microsoft") Motion to Dismiss or to Transfer (Dkt. No. 16) and Opposed Motion to Dismiss Amended Complaint (Dkt. No. 33.)   The latter motion, though directed at Plaintiff's Amended Complaint, substantially overlaps with the earlier motion.[1]   As such, the Court deems it proper to address both motions together.   On May 16, 2014, the Court held a hearing on Microsoft's motions.   Having considered the parties' written submissions and oral arguments, the Court **DENIES WITHOUT PREJUDICE** Microsoft's Motion to Dismiss under Fed. R. Civ. P. 12(b)(7), and **DENIES** Microsoft's Motion to Transfer Venue.

## I.       Background

The following events leading up to Microsoft's motions are substantially undisputed.   On September 30, 2010, Microsoft entered into a license agreement ("License Agreement" or

---

[1] In the latter motion, Microsoft withdrew its previous argument that the case should be dismissed under Fed. R. Civ. P. 12(b)(3).   (*Compare* Dkt. No. 16-1 *with* Dkt. No. 33.)

1

"Agreement") with Acacia Research Corporation ("ARC"), under which Microsoft obtained a license to certain patents then held by ARC and its affiliates as well as a covenant not to sue from these entities.   (*See* Dkt. No. 16-21 ("Agreement"), ¶¶ A2.1, A2.2.)   The Agreement contained an "Updating of ARC Patents" clause, which states:

> At least thirty (30) days prior to each anniversary of the Option Exercise Date, ARC shall send Microsoft a list of any additional patents beyond those identified in Schedule A that meet the definition of Acacia Patents and a list of any Acacia Patents that any Acacia Entity has sold or other transferred any enforcement rights thereunder.

(Agreement, ¶ A6.7.)   In addition, the parties agreed that the Agreement "may be pleaded as a full and complete defense to, and may be used as a basis of an injunction against, any action at law, proceeding in equity, or any other judicial, quasi-judicial or administrative charge or proceeding relating to the Acacia Patents against Microsoft or an Authorized Third Party."   (Agreement, ¶ A2.8.)   Finally, the Agreement included a "Choice of Law and Venue" clause, which specified that the contract is to be governed and construed according to New York law.   (Agreement, ¶ 4.10.)   As to venue, it stated:

> With respect to all civil actions or other legal or equitable proceedings directly arising between the parties or any of their Affiliates under this Option Agreement, the Parties consent to exclusive jurisdiction and venue in the United States District Court for the Southern District of New York (the "Forum") unless no federal jurisdiction exists…

(*See* Agreement, ¶ 4.10.)

Under the Agreement, Microsoft's license would terminate on September 30, 2013, unless it elected to extend the license period.   (*See* Agreement, ¶¶ A1.8, A4.1.)   Microsoft did not so elect and the license expired under its own terms on September 30, 2013.   On October 1, 2013, the day after the license expired, seven ARC subsidiaries filed seven separate patent infringement

2

lawsuits, including the instant one, against Microsoft in three different states and four different cities (the "Subsidiary Actions"). (*See* Dkt. No. 16-3 ("First Robbins Decl."), ¶¶ 2-17.) In the instant action, Plaintiff Innovative Display Technologies LLC ("IDT") asserted seven patents against Microsoft. (*See* Dkt. No. 1 ("Compl.").) All seven patents were acquired by ARC in early 2013 and subsequently assigned to IDT in June, 2013.

In its original complaint, IDT alleges that Microsoft "*has* purposefully infringed" the asserted patents (the "Patents in Suit"). (*See, e.g.*, Compl. ¶ 6 (emphasis added).) On November 20, 2013, Microsoft filed a first Motion to Dismiss under Rule 12(b)(7) or Transfer, arguing, among other things, that ARC is an indispensable party to this lawsuit. Microsoft asserted that ARC had breached the License Agreement by claiming, through its subsidiaries, patent infringement damages incurred during the effective period of the license. (*See* Dkt. No. 16-1 at 6-7.) IDT amended its complaint on December 9, 2013, making it clear that it only seeks damages and injunctive relief based on Microsoft's alleged infringement "[f]or periods of time beginning on October 1, 2013." (*See* Dkt. No. 26 ("FAC") ¶ 6.) Microsoft filed a second Motion to Dismiss, this time directed at IDT's amended complaint. (*See* Dkt. No. 33.)

Meanwhile, on November 20. 2013, Microsoft sued ARC in the US District Court at the Southern District of New York ("SDNY"), alleging breach of contract as well as abuse of process (the "SDNY Action"). (*See* Dkt. No. 16-21 ("SDNY Compl.").) In the SDNY Action, Microsoft sought an injunction barring ARC and any of its affiliates from asserting patents acquired during the license period that were not identified to Microsoft as being infringed. (*See* Dkt. No. 16-21, SDNY Compl. at 15.) Microsoft's request for an injunction was based on ARC's alleged breach of the update and notice provision of the Agreement. (*See* SDNY Compl. ¶¶ 32-36.) ARC moved to dismiss Microsoft's complaint under Rule 12(b)(6). On April 25, 2014,

Judge Crotty at SDNY denied ARC's Motion to Dismiss in all aspects.  (*See* Summary Order, Microsoft v. Acacia, No. 1:13-cv-08275 (S.D.N.Y. April 25, 2014), ECF No. 37.)

## II.      Microsoft's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(7)

Microsoft argues that the instant case should be dismissed pursuant to Rule 12(b)(7), because ARC is an absent, yet indispensable party to the lawsuit.  *See* Fed. R. Civ. P. 12(b)(7), 19(b).  "Whether a party is indispensable under Rule 19(b) is a matter of regional circuit law." *Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1269 (Fed. Cir. 1998).

Rule 19 establishes a two-step inquiry for determining whether to dismiss a case for failure to join an indispensable party.  *Hood ex rel. Mississippi v. City of Memphis, Tenn.*, 570 F.3d 625, 628 (5th Cir. 2009).  First, the district court must determine whether the party's presence is "required" or "necessary" under Rule 19(a):

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  "While the party advocating joinder has the initial burden of demonstrating that a missing party is necessary, after an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder."  *Hood*, 570 F.3d at 628 (internal quotations omitted).  If the necessary party cannot be joined without destroying subject-matter jurisdiction or joinder is infeasible for

other reasons, the court must then determine whether that person is indispensable, that is, whether litigation can be properly pursued without the absent party.  *Id.* at 629.  The factors that the district court is to consider in making this determination are laid out in Rule 19(b):

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b); *id.*

### a.   ARC's Status as a Necessary Party to This Lawsuit

Microsoft argues that it has defenses and counterclaims against ARC that arise under the License Agreement and turn on its proper interpretation, and ARC, as the only other contracting party, is thus required to join the instant case.  IDT, on the other hand, contends that the now expired License Agreement is not at issue in this case, where IDT's amended complaint only seeks relief for patent infringement beyond the expiration date of the license.  Whether ARC is a necessary party therefore depends on whether, and to what extent, this Court may be called upon to interpret the terms of the prior License Agreement.

On first glance, IDT has asserted a straight-forward patent infringement claim against Microsoft.  There exists some ambiguity in IDT's original complaint as to whether it was improperly seeking damages for Microsoft's alleged infringement during the term of the license.  (*See* Compl. ¶ 6 ("Microsoft *has* purposefully and voluntarily placed one or more of its infringing products…")(emphasis added).)  The amended complaint, however, makes it clear that IDT's

request for recovery is limited to the time period after the license expired.    Nevertheless, the Court finds that the prior Agreement is not so far removed from the subject matter of the instant case such that it should be left out entirely.

In the SDNY action, Microsoft claimed that ARC was contractually obligated to provide Microsoft with a written update of all later-acquired patents – patents ARC acquired from September 30, 2010 to September 30, 2013 – which ARC believed Microsoft was infringing. (*See* SDNY Compl. ¶¶ 32, 35.)   Microsoft further claimed that ARC breached the contract by failing to notify Microsoft regarding certain later-acquired patents now asserted in the Subsidiary Actions, and that such breach warranted an injunction precluding the prosecution of all Subsidiary Actions.[2]   (*See id.* ¶¶ 34-35, at 14.)   ARC denied that it was so obligated and urged the SDNY to dismiss Microsoft's breach of contract claim under Rule 12(b)(6).   (*See* Acacia's Motion to Dismiss at 18-19, Microsoft v. Acacia, No. 1:13-cv-08275 (S.D.N.Y. January 21, 2014), ECF No. 28.)   ARC's Motion to Dismiss was summarily denied.   (*See* Summary Order, Microsoft v. Acacia, No. 1:13-cv-08275 (S.D.N.Y. April 25, 2014), ECF No 37.)   In other words, the SDNY found that Microsoft had stated a plausible claim for breach of contract under the notice provision of the Agreement and for injunctive relief.   At the May 16, 2014 hearing before this Court, Microsoft indicated that, if this case were to proceed in the absence of ARC, Microsoft would nonetheless raise ARC's alleged breach of contract as a defense to IDT's patent infringement claims, and on that basis seek to enjoin IDT from prosecuting the instant case.[3]   (*See* Dkt. No. 53, Transcript at 10:19-11:3.)

With this background in mind, the Court turns to the first part of the inquiry under Rule 19.

---

[2] To support its claim for ARC's alleged failure to provide notice, Microsoft alleges that "[i]n the only written update ever provided, in December 2012 ARC represented that Microsoft was not infringing any patents that ARC or its Affiliates acquired after September 30, 2010."   (*See* SDNY Compl. ¶ 32.)
[3] Though never made clear by Microsoft, the Court's best understanding of Microsoft's potential defense is one akin to equitable estoppel.

The Court rejects from the outset IDT's argument that the now expired License Agreement is not at issue in this case.   As noted above, in the SDNY Action, Microsoft has sought an injunction enjoining the prosecution of all the Subsidiary Actions based on ARC's alleged breach of contract. It likewise has stated its intent to assert the same counterclaim/defense in this case.   Although Microsoft has not answered IDT's complaint, the Court has no reason to doubt such stated intent, and believes there exists a "substantial risk" that it will be called upon to construe (at a minimum) the notice provision of the Agreement.   *See Francis Oil & Gas, Inc. v. Exxon Corp.*, 661 F.2d 873, 877 (10th Cir. 1981) ("There need only be substantial risk and not certainty that the considered events of Rule 19(a) come to pass.") (citing *Window Glass Cutters League of America, AFL/CIO v. American St. Gobain Corp.*, 428 F.2d 353 (3rd Cir. 1970)).

Generally, "where interpretation of a contract is involved, parties to the contract must be joined."   *Harris Trust and Sav. Bank v. Energy Assets Intern. Corp.*, 124 F.R.D. 115, 117 (E.D. La. 1989); *see also Dawavendewa v. Salt River Project Agr. Imp. and Power Dist.*, 276 F.3d 1150, 1156-57 (9th Cir. 2002) (contracting party held necessary to litigation which "threatened the [party's] contractual interests, and thus, its fundamental economic relationship with [another contracting party].")   Such general rule is grounded in Rule 19(a), under which an absent person must be joined if "that person claims an interest relating to the subject of the action," and "disposing of the action in the person's absence may as a practical matter impair or impede the person's ability to protect the interest."   Fed. R. Civ. P. 19(a)(1)(B)(i).   No court can adjudicate directly upon a person's rights, unless the person is "actually or constructively before [it]." *Calcote v. Texas Pac. Coal & Oil Co.*, 157 F.2d 216, 225 (5th Cir 1946); *Mallow v. Hinde*, 25 U.S. 193, 198, 6 L. Ed. 599 (1827).

Here, Microsoft and ARC were the only two contracting parties to the License Agreement.[4]
(*See* Dkt. No. 16-21 at 26.)   Interpreting the notice provision of the Agreement would determine
whether ARC is contractually obligated to notify Microsoft of all later acquired patents thought to
be infringed – a claim Microsoft has asserted in SDNY and which has passed the scrutiny of Rule
12(b)(6).   ARC apparently "claims an interest relating to the subject" of this issue.   Fed. R. Civ.
P. 19(a)(1)(B).   An interpretation unfavorable to ARC may lead to a finding that it breached the
contract and ultimately an injunction enjoining IDT (in its capacity as ARC's subsidiary) from
prosecuting the instant case.   Such a ruling would also set a (non-binding) precedent hindering
ARC and its subsidiaries' ability to prosecute similar cases against Microsoft.   Put it differently,
in the likely event that Microsoft asserts an equitable defense based on ARC's alleged breach of
contract, ARC should be afforded an opportunity to present rebutting evidence and be heard before
this Court.   Any adjudication unfavorable to ARC rendered in its absence "may as a practical
matter impair or impede" ARC's (and its subsidiaries') right as a patent owner to enforce its
patents against Microsoft.   *See* Fed. R. Civ. P. 19(a)(1)(B)(i).

Further, IDT, though a wholly-owned subsidiary of ARC, cannot adequately represent
ARC's interest in this case.   IDT owns only the patents asserted here, while an unfavorable
adjudication against ARC may impede its ability to enforce other patents against Microsoft,
including the patents asserted in other Subsidiary Actions pending in this district or elsewhere.
Moreover, while ARC's alleged breach of contract is at issue in both this case and the SDNY
Action, IDT and ARC apparently have not been coordinating their litigation strategies.   In the
SDNY action, ARC argues that Microsoft's breach of contract claim may only be asserted in the
Subsidiary Actions because they are "compulsory counterclaims" in those actions.   (*See* Acacia's

---

[4] Neither party has discussed whether, under the agency theory, the License Agreement also binds ARC subsidiaries
such as IDT.

Motion to Dismiss at 26.)   IDT, however, argues that, under the forum selection clause of the Agreement, Microsoft must assert its breach of contract claim in SDNY.  (*See* Transcript at 35:23-36:1.)   Given these obvious inconsistencies between ARC and IDT's respective approaches to Microsoft's breach of contract claim, the Court has serious doubts that IDT would fairly and adequately represent ARC's interest in this case.

Therefore, ARC is a necessary party to this dispute.   ARC's rights as a practical matter may be impaired if this action proceeds in its absence.   This is because ARC is a party to the License Agreement that forms the basis of Microsoft's likely equitable defense and request for injunctive relief.   Any adjudication under the Agreement unfavorable to ARC would impose upon it certain contractual obligations.   ARC's alleged failure to perform those obligations may ultimately lead to a ruling that impairs its rights to enforce other patents against Microsoft.[5]

### b.  Joinder is not Clearly Infeasible

Next, this Court must determine if ARC can be joined as a party to this dispute.   *See Hood*, 570 F.3d at 629.   Microsoft argues that joinder is infeasible because it is contractually obligated to bring its breach of contract and related claims against ARC in SDNY, pursuant to the forum selection clause of the Agreement.

"The choice of forum was made in an arm's length negotiation by experienced and sophisticated businessmen, and absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts."   *See M/S Bremen v. Zapata Off-Shore Co.*,

---

[5] Microsoft further argues that, in the absence of ARC, Microsoft will be subject to "a substantial risk of" inconsistent obligations because the License Agreement may be interpreted inconsistently among the Subsidiary Actions and Microsoft's SDNY Action.  *See* Fed. R. Civ. P. 19(a)(1)(B)(ii).  This Court disagrees.  Microsoft confuses the possibility of inconsistent obligations with inconsistent *adjudications*.  *See In re Chinese Manufactured Drywall Products Liab. Litig.*, 273 F.R.D. 380, 388 (E.D. La. 2011); *see also Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998)(discussing the difference between inconsistent obligations and inconsistent adjudications). Different district courts' inconsistent interpretations of a contract do not rise to the level of "inconsistent obligations" contemplated under Rule 19.   (*See* Dkt. No. 51-1, Memorandum Opinion and Order at 9, *Video Streaming Solutions LLC v. Microsoft Corp.*, No. 13 C 7031 (N.D. Ill. May 27, 2014).)

407 U.S. 1, 12 (1972).   Forum selection clause, however, does not deprive a court of jurisdiction. *See id.*; *PC Specialists, Inc. v. Micros Sys., Inc.*, 10-CV-78 JLS WVG, 2011 WL 3475369, at *3 (S.D. Cal. Aug. 9, 2011).   A contracting party can obviously waive a forum selection clause, thereby relieving the other party of any obligation to file suits in the originally specified forum.

Here, Microsoft is contractually obligated to file all claims or counterclaims "arising between [Microsoft and ARC] or any of their Affiliates" under the License Agreement in SDNY. (*See* Agreement, ¶ 4.10.)   However, it is not clearly infeasible for Microsoft to raise such counterclaims against ARC in this case.   The forum selection clause does not destroy this Court's subject matter jurisdiction.   *See Hood*, 570 F.3d at 628-29.   ARC might ultimately elect to waive the forum selection clause and consent to be sued in this Court.   *See PC Specialists*, 2011 WL 3475369, at *3.   Therefore, whether joinder is feasible depends on whether ARC, if and when impleaded by Microsoft, will voluntarily waive the forum selection clause.[6]   Suppose, however, ARC does object to impleader on the basis of venue, the Court then will likely have to dismiss Microsoft's counterclaims against ARC.   In that circumstance, joinder would clearly be infeasible and the Court must consult Rule 19(b) to determine whether or not to proceed without ARC.

In sum, while the Court finds that ARC is a necessary party to this case, joining ARC as a party is not clearly infeasible.   Given that the Court cannot ascertain at this time whether ARC will voluntarily waive the forum selection clause, the Court **DENIES WITHOUT PREJUDICE** Microsoft's Motion to Dismiss under Rule 12(b)(7).   Microsoft may re-urge this issue if further

---

[6] In the SDNY action, ARC argues that, notwithstanding the forum selection clause, Microsoft should file its counter claims of breach of contract in the Subsidiary Actions as these claims are compulsory counterclaims in these actions. In other words, the compulsory nature of Microsoft's counterclaims somehow overcomes its contractual obligation under the forum selection clause.   Not only was this argument rejected by the SDNY, it is also contrary to established authority that compulsory counterclaims do not trump the forum selection clause.   *See Publicis Commc'n v. True N. Commc'ns Inc.*, 132 F.3d 363, 366 (7th Cir. 1997)(agreeing with the Second Circuit's view that "a party to a forum-selection clause may not raise in a different forum, even as a compulsory counterclaim, a dispute within the scope of that clause [without the other contracting party's consent].")(citing *Karl Koch Erecting Co. v. New York Convention Center Development Corp.*, 838 F.2d 656, 659 (2d Cir. 1988).

development makes it clear that joining ARC is infeasible.

### III.   Microsoft's Motion to Transfer Venue

In the alternative to its Motion to Dismiss, Microsoft seeks to transfer this patent infringement case to the SDNY pursuant to 28 U.S.C. § 1404(a).   Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."   28 U.S.C. § 1404(a).   The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."   *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").   Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case.   *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).   Further, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause.   Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied."   *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013).

Here, the parties do not dispute that IDT's patent infringement claims could have been filed in SDNY.   Without addressing the other "public and private factors" generally relating to the § 1404(a) analysis, Microsoft bases its request to transfer solely upon the forum selection clause under the License Agreement.   (*See* Transcript at 25:11-13.)   The forum selection clause, however, is not applicable to IDT's patent infringement claims.   In its First Amended Complaint, IDT makes it clear that it only seeks to recover damages and injunctive relief based on Microsoft's

alleged infringement that took place *after* the expiration date of the license.  (*See* Dkt. No. 26 ("FAC") ¶ 6.)  Such claims do not arise under the License Agreement, and are therefore not governed by the forum selection clause.  (*See* Memorandum Opinion and Order at 7, *Video Streaming Solutions LLC v. Microsoft Corp.*, No. 13 C 7031 (N.D. Ill. May 27, 2014).) Therefore, Microsoft has failed to meet its burden to demonstrate that IDT's patent infringement claims should be transferred to the SDNY.

## IV.    Conclusion

For the reasons stated above, the Court **DENIES WITHOUT PREJUDICE** Microsoft's Motion to Dismiss under Rule 12(b)(7), and **DENIES** Microsoft's Motion to Transfer Venue. (*See* Dkt. Nos. 16, 33.)


**So ORDERED and SIGNED this 17th day of June, 2014.**


RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE